# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

VINELAND 820 N. MAIN ROAD,
LLC,

        Plaintiff,

   v.

UNITED STATES LIABILITY
INSURANCE COMPANY, BIONDI
INSURANCE AGENCY, INC.,
STEVEN TRAMONTANA,

        Defendants.

CIVIL NO. 17-2986 (NLH/JS)

**OPINION**

---

**APPEARANCES:**

SABINA DHILLON
LAW FIRM OF SABINA DHILLON, LLC
103 CARNEGIE CENTER, SUITE 300
PRINCETON, NJ 08540

    On behalf of Plaintiff.

RICHARD S. NICHOLS
GENNET, KALLMANN, ANTIN, SWEETMAN & NICHOLS, PC
6 CAMPUS DRIVE
PARSIPPANY, NJ 07054

    On behalf of Defendant United States Liability Insurance
Company.

LAWRENCE BRENT BERG
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
WOODLAND FALLS CORPORATE PARK
200 LAKE DRIVE EAST - SUITE 300
PO BOX 5049
CHERRY HILL, NJ 08002-5049

    On behalf of Defendants Biondi Insurance Agency, Inc. and
Steven Tramontana.

**HILLMAN**, District Judge

This case concerns the denial of an insurance claim and the interpretation of a protective devices condition in an insurance contract. Presently before the Court is Defendant, United States Liability Insurance Company's ("USLIC") Motion for Summary Judgment, Defendants Biondi Insurance Agency, Inc.'s ("Biondi") and Steven Tramontana's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. For the reasons expressed below, Defendants' motions will be granted and Plaintiff's motion will be denied.

## BACKGROUND

We take our brief recitation of the facts from Defendants' Statements of Material Facts.[1] Plaintiff, Vineland 820 N. Main Road, LLC ("Vineland 820"), is solely owned by Inderpreet Singh. Vineland 820 owns premises located at 820 N. Main Road,

---

[1] Plaintiff has filed no responsive statements of material facts, nor has it filed a statement of material facts in connection with its own Motion for Summary Judgment. This violates Local Rule 56.1. A violation of Local Rule 56.1 is enough, "by itself . . . to deny [a party]'s motion for summary judgment." Bowers v. NCAA, 9 F. Supp. 2d 460, 476 (D.N.J. 1988). Even if a court does not dismiss a responsive pleading for this deficiency, it may nevertheless deem all facts that are uncontested as admitted. Hill v. Algor, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000). In the interest of judicial economy and giving Plaintiff a full hearing on the merits, this Court declines to dismiss Plaintiff's motion or deem all facts as admitted. Instead this Court will analyze Plaintiff's response on its merits and note any factual additions or disagreements where applicable.

Vineland, New Jersey.  It appears that sometime in 2014, either
Paula Jones or Sandy Davis, two individuals working for Vineland
820 who managed the property, contacted Tramontana, an insurance
producer with Biondi, about obtaining property insurance.  The
contents of those conversations is unknown.[2]  In order to procure
insurance, Biondi worked with a company named Tri-State.  Tri-
State would provide insurance quotes and send out applications
to different insurance companies, including USLIC, based on the
information Biondi provided.  Biondi did not write insurance
policies and could not bind coverage.

Singh stated that he believed he also spoke with Tramontana
at some point, but could not remember the content of the
conversation.  Singh only remembers that he spoke with
Tramontana about payment and that at some point an individual at
Biondi requested "some building patch up" to be done before
issuance of a bond.  According to Singh, the request was to fix
paint on the building and "some flashing of the roof or
something along those lines" before coverage was bound.  Singh

---

[2] Plaintiff has presented a number of emails between the parties,
which are, for the most part, consonant with Singh's deposition
testimony.  The only correspondence that was not explicitly
covered in Singh's deposition testimony is an email and letter
discussing an electrical panel somewhere on the premises that
may or may not have been a source of live electricity.  This is
discussed, <u>infra</u>, in the analysis section.

did not believe "any electrical issue[s]" needed to be fixed nor that Biondi or Tramontana asked him to do so.[3]

Eventually, Biondi — through Tri-State — found that USLIC was willing to insure the property. On September 19, 2014, USLIC issued a property insurance policy covering the premises located at 820 N. Main Road, Vineland, New Jersey.[4] Part of the policy contained a form labeled CP 142 and titled "Protective Devices Or Services Provisions."[5] The policy required, as a condition of insuring the building, that Plaintiff "have and maintain the Protective Devices or Services listed" in an incorporated schedule.

The schedule required that "[a]ll electric is on functioning and operational circuit breakers."[6] This was identified by symbol "P-6" on the schedule. The policy stated:

---

[3] This appears to be correct as Paula Jones, not Singh, conducted an email correspondence with Tramontana about an electrical panel at the premises. Again, this is discussed in more detail, infra.

[4] The insurance policy covered multiple buildings. The premises in question here, 820 N. Main Road, Vineland, New Jersey, was denoted as "Premises Number 1" on the policy.

[5] No party disputes that this provision was part of the insurance contract agreed to between the parties.

[6] It seems that prior to its insurance contract with USLIC, Vineland 820 was insured by Capitol Specialty Insurance Corporation. It is unclear, but it appears that an individual at Vineland 820, possibly Singh, signed a form verifying that "100% of wiring is on functioning and operational with [sic]

4

> With respect to . . . "P-6" . . . [USLIC] will not pay
> for loss or damage caused by or resulting from fire
> if, prior to the fire, [Plaintiff]:
> > (1) Knew of any suspension or impairment in any
> > protective safeguard listed in the Schedule
> > . . . and failed to notify [USLIC] of that
> > fact; or
> > (2) Failed to maintain any protective safeguard
> > listed in the Schedule . . ., and over which
> > you had control, in complete working order.

According to both USLIC's and Plaintiff's expert reports, on May 7, 2015, a fire started in the wiring on the second floor of 820 N. Main Road. USLIC's expert, Louis H. Gahagan, opined that the "main electrical panel" for the second-floor apartment that caught fire was actually a "fuse panel box." Undisputed pictures reveal that, in fact, this was a fuse panel box with four fuses. Plaintiff's own expert admits the existence of this "fused subpanel," states that the "original wiring serving the fuse box was in use," and "3 of the type TL 30A fuses were open and showed signs of current through them."

Plaintiff, however, suggests in his argument that the "fused subpanel was protected by a circuit breaker." Plaintiff suggests that his expert, John M. Tobias, opined that the circuit breaker serving the fused subpanel, was operational and confirmed "no malfunction of the fuses." This is not consonant with the expert's own words, which state, in full: "It is not

---

circuit breakers." No similar form has been produced in relation to the policy with USLIC.

known if these breaker [sic] functioned (opened) but the report that an occupant functioned the circuit breakers prior to arrival of the fire department suggests they did not." (emphasis added).

Moreover, Plaintiff points to the expert reports and a Vineland Fire Investigation Unit Incident Report ("Incident Report") to assert that the fuses were not the cause of the fire. Instead, the two expert reports and the Incident Report suggest a wire in the ceiling leading to the ceiling fan was the likely cause of the fire. Defendants do not dispute that this was the likely cause of the fire.

After the fire, Tramontana forwarded Vineland 820's claim to USLIC. Besides this ministerial act, Tramontana testified that Biondi "do[es] nothing with claims" and that he did nothing further with the instant claim. USLIC denied Plaintiff's insurance claim in a June 8, 2015 letter, citing the above-mentioned breach of the Protective Device condition.

Plaintiff filed a complaint on May 2, 2017, alleging wrongful denial of claims, bad faith, failure to conduct a reasonable investigation, breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, and requested punitive damages. USLIC answered on June 8, 2017 and Biondi and Tramontana answered on June 9, 2017. Discovery ensued. USLIC filed a Motion for Summary Judgment on

December 14, 2017, Plaintiff filed its opposition on January 2, 2018, USLIC filed its reply brief on January 9, 2018. On March 1, 2018, Biondi and Tramontana filed a Motion for Summary Judgment, Plaintiff filed its opposition on April 9, 2018, and Biondi and Tramontana filed their reply brief on April 30, 2018. Plaintiff filed its Motion for Summary Judgment on March 15, 2018, Defendants filed their opposition on April 9 and 10, 2018, and Plaintiff filed its reply on May 1, 2018.

## DISCUSSION

### A.  Subject Matter Jurisdiction

This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332, as the requirements of diversity are met.

### B.  Standard for Motion for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving

party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

248 (1986).  A fact is "material" if, under the governing

substantive law, a dispute about the fact might affect the

outcome of the suit.  <u>Id.</u>  "In considering a motion for summary

judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence;

instead, the non-moving party's evidence 'is to be believed and

all justifiable inferences are to be drawn in his favor.'"

<u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)

(citing <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.

<u>Celotex</u>, 477 U.S. at 323 ("[A] party seeking summary judgment

always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."); <u>see</u> <u>Singletary v. Pa.</u>

<u>Dep't of Corr.</u>, 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although

the initial burden is on the summary judgment movant to show the

absence of a genuine issue of material fact, 'the burden on the

moving party may be discharged by "showing"—that is, pointing

out to the district court—that there is an absence of evidence

to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

### C. Choice of Law Governing USLIC Insurance Policy

Before deciding the substantive issues presented in these cross-motions for summary judgment, this Court must first determine which state's law to apply in interpreting the insurance contract. Only USLIC has identified and briefed this choice of law issue. None of the parties dispute — in either

their motions, responses, or replies — USLIC's position
requiring New Jersey substantive law to be applied.[7]
Nevertheless, the Court briefly includes a choice of law
analysis in order to satisfy itself that New Jersey substantive
law is correctly applied in this case.

The first step in determining which state's substantive law
should apply is to determine which state's choice of law rules
apply. Federal law requires a federal court sitting in
diversity to apply the choice of law rules of the forum state in
which it sits. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487,
496 (1941). This Court sits in New Jersey, so it will apply New
Jersey choice of law rules.

Next, according to New Jersey law, the Court determines
whether there is an actual conflict between the state laws at
issue. Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006).
No party has identified a conflict between the relevant laws of
the possibly interested states. Considering the domicile of the
parties is Delaware, Pennsylvania, and New Jersey, each of these
states may potentially have an interest in their law applying to
this dispute. We will assume here, solely for purposes of this

---

[7] In fact, Plaintiff's complaint and briefing suggests that it
believes New Jersey law should apply, as it relies on New Jersey
statutes for a number of its claims.

analysis, that a true conflict exists between the laws of these states.

Finally, the Court determines, in the face of a true conflict, which state's substantive law should apply. When analyzing a fire insurance policy, "a court looks first to the Restatement [(Second) of Conflict of Laws] section 193." Pfizer, Inc. v. Emp'rs Ins. of Wasau, 712 A.2d 634, 637-38 (N.J. 1998) (quoting Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co., 629 A.2d 885, 893 (N.J. 1993)) (emphasis in original). Restatement § 193 provides:

> The validity of a contract of fire, surety or casualty
> insurance and the rights created thereby are
> determined by the local law of the State which the
> parties understood was to be the principal location of
> the insured risk during the term of the policy, unless
> with respect to the particular issue, some other State
> has a more significant relationship . . . .

The choice of law issue here is straightforward. The principal location of the insured risk was the premises located in Vineland, New Jersey. As the Restatement suggests in its commentary, the "location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." § 193, cmt. b.

The other contacts also point to New Jersey. The contract was negotiated in New Jersey by Plaintiff, a Delaware entity,

and Biondi, a New Jersey entity.  Even though USLIC is a
Pennsylvania entity, it included specific New Jersey forms in
the insurance policy and argues in favor of the application of
New Jersey substantive law, which shows at least it expected the
contract to be governed by New Jersey law.  Therefore, this
Court finds that New Jersey law applies in interpreting this
insurance contract.  See <u>Fantis Foods v. N. River Ins. Co.</u>, 753
A.2d 176, 177-180 (N.J. Super. Ct. App. Div. 2000) (affirming
New York law applied to an insurance contract sold to New Jersey
plaintiff in New York, by New York producer, covering building
in New York).

### D.   USLIC's Motion for Summary Judgment

USLIC's Motion for Summary Judgment focuses on one point:
as a condition of providing insurance, Vineland 820 was required
to maintain operational circuit breakers for all electric at the
premises; Vineland 820 failed to meet this condition.  Because
Vineland 820 failed to meet this condition, USLIC argues that it
has no obligation under the insurance policy to pay for any
damage caused by the fire.

Plaintiff resists summary judgment by relying on a few
arguments.  First, Plaintiff argues that because the use of a
fuse (or a non-functioning circuit breaker) was not the cause of
the fire, it was "unfair" for USLIC to deny coverage.  Second,
Plaintiff argues that it did not know of the "Protective Devices

Or Services Provisions," that it was an "obscure" provision of the contract, and that USLIC's alleged agents[8], Biondi and Tramontana, did not disclose this provision to Plaintiff. As a result, it is unfair to allow USLIC to deny the claim based on the language of this provision. Third, Plaintiff argues that because the fuses were on a circuit breaker, denial of coverage was incorrect. Fourth, Plaintiff argues that the above-cited provision only applies if Plaintiff had knowledge that electricity was running through fuses or a circuit breaker was non-operational.

Before moving to Plaintiff's legal arguments, it is important to first address Plaintiff's fourth argument concerning the language of the insurance provision at issue. As discussed above, the relevant provision does not require Plaintiff's knowledge of "suspension or impairment in any protective safeguard" before the fire for USLIC to deny coverage. In full, the provision states:

> With respect to . . . "P-6" . . . [USLIC] will not pay
> for loss or damage caused by or resulting from fire
> if, prior to the fire, [Plaintiff]:
>> (1)  Knew of any suspension or impairment in any
>>      protective safeguard listed in the Schedule
>>      . . . and failed to notify [USLIC] of that
>>      fact; or

---

[8] Biondi and Tramontana are not agents of USLIC. Plaintiff has presented no facts showing otherwise, but seemingly relies instead upon its complaint. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana, 260 F.3d at 232.

(2)   Failed to maintain any protective safeguard
                          listed in the Schedule . . ., and over which
                          you had control, in complete working order.

Therefore, Plaintiff's argument that knowledge is required is

completely unsupported by the provision.  As long as Plaintiff

"[f]ailed to maintain" circuit breakers for all electricity in

the building, USLIC retained the right to not cover loss

stemming from the fire.

    This Court follows the lead of the New Jersey Supreme Court

in interpreting this insurance contract:

        In attempting to discern the meaning of a provision in
        an insurance contract, the plain language is
        ordinarily the most direct route.  Zacarias v.
        Allstate Ins. Co., 775 A.2d 1262, 1264 (N.J. 2001).
        If the language is clear, that is the end of the
        inquiry. Ibid.  Indeed, in the absence of an
        ambiguity, a court should not "engage in a strained
        construction to support the imposition of liability"
        or write a better policy for the insured than the one
        purchased.  Progressive Cas. Ins. Co. v. Hurley, 765
        A.2d 195, 202 (N.J. 2001) (citing Brynildsen v.
        Ambassador Ins. Co., 274 A.2d 327, 329 (N.J. Super.
        Ct. Law Div. 1971)).

        If the terms of the contract are susceptible to at
        least two reasonable alternative interpretations, an
        ambiguity exists. Nester v. O'Donnell, 693 A.2d 1214,
        1220 (N.J. Super. Ct. App. Div. 1997).  In that case,
        a court may look to extrinsic evidence as an aid to
        interpretation. Ibid. Where a word or phrase is
        ambiguous, a court generally will adopt the meaning
        that is most favorable to the non-drafting party if
        the contract was the result of negotiations between
        parties of unequal bargaining power. Pacifico v.
        Pacifico, 920 A.2d 73, 78-79 (N.J. 2007) (citing RCI
        Ne. Servs. Div. v. Boston Edison Co., 822 F.2d 199,
        203 n.3 (1st Cir. 1987)).

        Although not a canon of construction, courts
        frequently look to how other courts have interpreted

                                    14

> the same or similar language in standardized contracts
> to determine what the parties intended, especially
> where rules in aid of interpretation fail to offer a
> clear result. <u>Cf. Weedo v. Stone-E-Brick, Inc.</u>, 405
> A.2d 788, 795 (N.J. 1979) (accepting interpretations
> of provision of insurance contract by other
> jurisdictions as "thoroughly persuasive" because of
> factual similarity and uniform wording of clauses);
> <u>see also</u> <u>Calamari & Perillo on Contracts</u> § 3.13 (5th
> ed. 2003) ("Where the rules in aid of interpretation
> and standards of preference fail to satisfy, courts
> frequently look to how other courts have interpreted
> the same or similar language.").

<u>Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.</u>, 948 A.2d

1285, 1289-90 (N.J. 2008).

This provision of the insurance contract is clear, and thus

will be given its plain meaning.[9]  The contract required "[a]ll

electric" to be "on functioning and operational circuit

breakers."  That means that all electric used in the building

must only run through a circuit breaker.  If, prior to a loss,

these circuit breakers were not maintained "in complete working

order" USLIC had no obligation to "pay for loss or damage caused

by or resulting from fire."

As is apparent from the language of the contract, Plaintiff

is also incorrect that USLIC must "connect the loss to the

exclusion condition in order for it to be even considered."

(emphasis in original).  Plaintiff cites no contractual language

---

[9] Plaintiff does not argue that this provision is unclear, but
instead rests its argument on the grounds that the provision is
"obscure."

supporting that argument and this Court finds none in the
provision.  While the provision requires that the damages at
issue must be "caused by or resulting from fire," no language
requires that the fire be caused by or resulting from use of
fuses or an inoperative circuit breaker.  Plaintiff's argument
on this point is factually unsupported and incorrect.  While
this result may seem harsh, to hold otherwise would be to write
into the contract a causation requirement where none exists.
The Court may not write a better contract for the Plaintiff than
the one it bought merely to allow for coverage.

Plaintiffs only remaining refuge lies in the case law.[10]
Case law from New Jersey has upheld denial of coverage based on
breach of so-called "protective safeguard" endorsements.
Tuscany Bistro, Inc. v. Sirius Am. Ins. Co., No. A-6293-08T2,
2011 N.J. Super. Unpub. LEXIS 2181 (N.J. Super. Ct. App. Div.
Aug. 12, 2011) (upholding a protective safeguards provision that
matches almost to the word, the one at issue in this case).  As
discussed above, the New Jersey Supreme Court looks favorably
upon other jurisdictions' interpretations of similar language.
Other jurisdictions have upheld similar provisions to the one at

---

[10] Although Plaintiff argues repeatedly that the insurance
contract was one of "adhesion" and that the provision should not
apply, it also states that "having an Exclusion [here
referencing Protective Devices provision] is fine."  This seems
to suggest that Plaintiff recognizes that such a provision is
not per se unlawful.

issue here.  See Scottsdale Ins. Co. v. Logansport Gaming,
L.L.C., 556 F. App'x 356 (5th Cir. 2014); Chaucer Corp. Capital
No. 2 Ltd. v. Norman W. Paschall Co., 525 F. App'x 895 (11th
Cir. 2013); Great Lakes Reinsurance (UK), PLC v. JDCA, LLC, No.
11-00001-WGY, 2014 U.S. Dist. LEXIS 163863 (D. Conn. Nov. 21,
2014); Berenato v. Seneca Speciality Ins. Co., 240 F. Supp. 3d
351 (E.D. Pa. 2017); Am. Way Cellular, Inc. v. Travelers Prop.
Cas. Co. of Am., 157 Cal. Rptr. 3d 385 (Cal. Ct. App. 2013);
Yera, Inc. v. Travelers Cas. Ins. Co. of Am., No. 1398 EDA 2013,
2014 Pa. Super. Unpub. LEXIS 1267 (Pa. Super. Ct. Apr. 22,
2014).  Plaintiff has cited no case law that holds differently.

Instead, Plaintiff argues that this case law is
distinguishable.  Plaintiff contends that Tuscany Bistro is
inapplicable because the fire protection system at issue in the
case was "indeed the cause of the fire."  The Court's reasoning
did not rely on whether the system was "the cause of the fire"
or even whether it contributed to the damage.  See Tuscany
Bistro, 2011 N.J. Super. Unpub. LEXIS 2181, at *9-11 (discussing
only whether the language of the insurance contract was clear
and unambiguous).  In fact, the opinion did not even disclose
the actual cause of the fire.  The same reasoning applies to
Berenato.  240 F. Supp. 3d at 356-358 (discussing only whether
the language of the insurance contract was clear and
unambiguous).  This Court finds that the case law supports

17

enforcement of this clear and unambiguous provision of the
insurance contract.

Plaintiff also argues that because Singh did not read the
insurance policy or because Tramontana did not recognize or
explain the at-issue provision to Singh (or even because the
provision was "obscure"), Plaintiff should not bound by it.
Common sense would dictate that words are no more or less
enforceable based on whether a person has a read them once or a
hundred times. New Jersey case law supports this contention, as
USLIC points out, saying: "a policyholder is obliged to read the
policy he receives and is bound by the clear terms thereof."
Millbrook Tax Fund, Inc. v. P.L. Henry & Assocs., Inc., 779 A.2d
1120, 1123 (N.J. Super. Ct. App. Div. 2001). An insured cannot
escape the clear terms of an insurance policy just because it
has not read them.

Moreover, USLIC is not legally responsible — meaning it
should not suffer the legal consequences, if any — for the
actions of Biondi and Tramontana. Plaintiff has presented no
evidence that shows that USLIC and Biondi or Tramontana had an
agreement, or that either served as the agent of the other.
USLIC, on the other hand, has produced Tramontana's deposition
testimony that shows that Biondi had no agency agreement with
USLIC and could not bind insurance for USLIC. In other words,

Biondi did not represent the insurer.  Plaintiff's argument is, therefore, factually unsupported.

Finally, this Court addresses the factual argument that Plaintiff's fuses were on a circuit breaker.  This argument does not save Plaintiff's coverage.  First, the fact that the fuses exist means that less than all of the electricity at the premises was on a circuit breaker.  Because electricity was running through the fuse, the electricity going through those fuses was not on a circuit breaker.[11]  Second, Plaintiff's own expert admits that the circuit breaker likely did not work.  So, even if this Court assumed — which it cannot — that the electricity was on a circuit breaker, there is no dispute that the circuit breaker was inoperative.  This still means that Plaintiff "[f]ailed to maintain [the circuit breaker] . . . in

---

[11] In a reply brief to Plaintiff's Motion for Summary Judgment, Plaintiff attaches a letter from Paula Davis, the Office Manager at Vineland 820 to Tramontana, which states that an "electrical panel" has been repaired and it was "found that it is not an active source of electricity."  This Court assumes that Plaintiff is attempting to assert that the fused subpanel at issue was not active.  This is not enough to raise a genuine issue of fact.  The source of this information does not state where the panel was or whether the panel contained fuses.  Nor does the letter address the above issue, that a circuit breaker likely was not operational at the time.  Moreover, it is contradicted by Plaintiff's own expert, who states "[t]he original wiring serving the fuse box was in use" and "3 of the type TL 30 A fuses were open and showed signs of current through them."

complete working order." This theory for coverage is also unavailing.

This Court finds that the denial of insurance coverage by USLIC for the fire that occurred on May 7, 2015 was proper. As a result, Plaintiff's claims are dismissed for the following reasons:

- **Unfair Claims Settlement Practices Act, Unfair Trade Practices Act, and the Consumer Fraud Act Claims** –

  Plaintiff has pointed to no evidence on the record that would show a violation by USLIC of these New Jersey statutes. As discussed both <u>supra</u> and <u>infra</u>, the denial of coverage was warranted under the contract, therefore no violations may stem from this action. This is not enough to allow these claims to survive summary judgment.

- **Bad Faith Denial, Delay of Coverage, or Lack of Reasonable Investigation** –

  Because bad faith requires an unreasonable denial or delay of coverage or a lack of reasonable investigation, and this Court finds denial of coverage was warranted, these claims against USLIC will not survive summary judgment. <u>Pickett v. Lloyd's & Peerless Ins. Agency, Inc.</u>, 621 A.2d 445, 457-58 (N.J. 1993) (requiring proof that "no debatable reasons exited for denial of the benefits" or "no valid reasons existed to delay processing the claim and the insurance

company knew or recklessly disregarded the fact that no valid reasons supported the delay").

- **Breach of Contract** –

  Because breach of contract requires evidence of a breach, and this Court finds that the denial of coverage was warranted, this claim against USLIC will not survive summary judgment.  RNC Sys., Inc. v. Modern Tech. Grp., Inc., 861 F. Supp. 2d 436, 444-45 (D.N.J. 2012) (holding that a breach of contract claim under New Jersey law requires proof of three elements: "(1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage to the plaintiff").

- **Breach of Implied Covenant of Good Faith and Fair Dealing** – Because a breach of the implied covenant of good faith and fair dealing requires wrongful denial of the "fruits of the contract" and there has been no such wrongful denial here, this claim against USLIC must also be dismissed.  R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 773 A.2d 1146 (N.J. 2001) ("[T]he implied duty of good faith and fair dealing means that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the full fruits of the contract . . . .'" (citations omitted)).

- **Violation of Fiduciary Duty** –

Plaintiff has failed to point to any record evidence to
show that USLIC owed Plaintiff a fiduciary duty, breached
that duty, or that the proximate cause of Plaintiff's harm
was that breach.  Moreover, USLIC could not have breached
its fiduciary duty in denying Vineland 820's claim, as this
Court finds the denial was proper under the contract.

- **Punitive Damages** –

  Because punitive damages cannot stand without an underlying
  claim, and all other claims having been dismissed, this
  claim against USLIC must also be dismissed.

As a result, USLIC's Motion for Summary Judgment will be granted
in full and all claims against USLIC will be dismissed.

### E.   Biondi and Tramontana's Motion for Summary Judgment

#### a. *New Jersey Unfair Claims Settlement Practices Act and Unfair Trade Practices Act[12]—Wrongful Denial of Claims,*

---

[12] Where defendants, as Biondi and Tramontana have done here,
point to the absence of a factual record, it is incumbent upon a
plaintiff to provide facts proving otherwise.  <u>Singletary</u>, 266
F.3d at 192 n.2 ("Although the initial burden is on the summary
judgment movant to show the absence of a genuine issue of
material fact, 'the burden on the moving party may be discharged
by "showing"—that is, pointing out to the district court—that
there is an absence of evidence to support the nonmoving party's
case' when the nonmoving party bears the ultimate burden of
proof." (citing <u>Celotex</u>, 477 U.S. at 325)).  Plaintiff has
seemingly asserted every possible statutory claim under the
Unfair Claims Settlement Practices Act ("UCSPA") and the Unfair
Trade Practices Act ("UTPA") as well as claims under the
Consumer Fraud Act ("CFA").  But, Plaintiff has brought forward
no facts to support the imposition of liability against either
Biondi or Tramontana, as Plaintiff has provided no evidence of
Biondi's or Tramontana's culpable acts or omissions.  Moreover,
insurance brokers are not subject to the CFA.  <u>Plemmons v. Blue</u>

### *Bad Faith, and Failure to Conduct Reasonable Investigation*

Defendants Biondi and Tramontana argue that Plaintiff's claims for wrongful denial of claims, bad faith, and failure to conduct reasonable investigation should be dismissed. They provide three reasons. First, Plaintiff cannot show that their claim was either wrongfully denied or denied in bad faith. Second, Plaintiff misconstrues the nature of the relationships between Biondi, Tramontana, and USLIC. They assert that they are not agents of the insurer, USLIC, so they cannot be held liable for denying the claims or failing to conduct a reasonable investigation of the same. Finally, they argue that Plaintiff has not brought forward any facts to show that Biondi or Tramontana made any omissions or committed any acts that would give rise to these claims.

Plaintiff presents a factually unsupported response. First, Plaintiff relies on its amended complaint, where it seems to allege some sort of derivative liability claim against Biondi and Tramontana. Plaintiff alleges that, as agents of USLIC, Biondi and Tramontana are responsible for their actions. In contradiction, Plaintiff's response to Biondi and Tramontana's motion for summary judgment suggests that the basis for

---

Chip Ins. Servs., Inc., 904 A.2d 825, 834 (N.J. Super. Ct. App. Div. 2006). These claims, to the extent they were asserted, are dismissed.

liability was "their dismal failure in not educating/alerting the Plaintiff of the exceptions, whether or not reasonable, known or obscure—the fact is that their oversights are examples of them not handling the matter properly for which they are licensed." This seems to suggest that Biondi and Tramontana have also committed unlawful acts separate and apart from those allegedly committed by USLIC.

Biondi and Tramontana are correct on all points. First, as discussed in the previous section, supra, Plaintiff's claim was not wrongfully denied. Therefore, this is not a case where there is "no debatable reason[] . . . for denial [or delay] of . . . benefits." Pickett, 621 A.2d at 457-58. Since the claim was not wrongfully denied, regardless of the relationship between the Defendants, no claim may rest on these factual grounds. The record does not support a wrongful denial, wrongful delay, or lack of reasonable investigation.

Second, Biondi and Tramontana are not agents of USLIC. They have presented sufficient record evidence to support this contention. Tramontana testified in his deposition that he was not an agent of USLIC, did not write the policy, could not bind insurance, and did not determine the viability of or investigate the claim made by Vineland 820. Plaintiff has presented no facts in response. Therefore, any claim made by Plaintiff that rests on an agency relationship cannot stand. Moreover, because

Biondi and Tramontana were not the insurers, performed no
investigation, and did not determine the viability of an
insurance claim they cannot be held liable for claims concerning
those actions.

Finally, regardless of the statutes invoked or claims made,
Plaintiff has offered no facts in support.  Instead, Plaintiff
has relied upon the allegations made in its complaint, which is
insufficient.  Plaintiff is reminded that for "the non-moving
party[] to prevail, [that party] must 'make a showing sufficient
to establish the existence of [every] element essential to that
party's case, and on which that party will bear the burden of
proof at trial.'"  Cooper, 418 F. App'x at 58 (citing Celotex,
477 U.S. at 322).  While Plaintiff makes multiple claims in its
amended complaint, it does not point to anywhere in the record
to support those claims.  Plaintiff does not show that Biondi or
Tramontana had anything to do with claim processing besides the
ministerial task of sending the claim to USLIC, of which
Plaintiff alleges no wrongdoing.  The first three claims in
Plaintiff's complaint are dismissed as against Biondi and
Tramontana.

### b. *Violation of Fiduciary Duty*

Defendants Biondi and Tramontana argue that Plaintiff's
breach of fiduciary duty claim must be dismissed for two
reasons.  First, Plaintiff has not retained an expert who has

opined that Biondi or Tramontana have breached a professional duty of care owed to Plaintiff. Second, Plaintiff has set forth no evidence showing duty, breach, or causation.

Plaintiff responds by stating that it filed an Affidavit of Merit by Benjamin F. Cloud which stated a breach has occurred.[13] Plaintiff also cites to numerous state court cases — citing none from New Jersey — which supposedly stand for the proposition that "fail[ing] to advise the client that the policy obtained contained limitations or exceptions that left client without the full requested coverage" can be the basis for a breach of fiduciary duty claim.

Plaintiff has not presented any facts showing breach. Since Defendants Biondi and Tramontana have alleged the record contains no facts showing a breach, it is incumbent on Plaintiff to point to the record to show the existence of those facts. Plaintiff has failed to do so. In fact, the only records available to this Court indicate that Plaintiff has established

---

[13] Biondi and Tramontana are correct to point out that the affidavit is not sufficient evidence of a breach. Cloud's Affidavit merely states "there is a reasonable probability that the care, skill or knowledge exercised or exhibited in the handling of [the] insurance issue at hand fell outside acceptable professional standards." (emphasis in original). Among the many problems with this affidavit being used to establish breach is that it does not even establish the standard of care required, which "must normally be established by expert testimony." Taylor v. DeLosso, 725 A.2d 51, 53 (N.J. Super. Ct. App. Div. 1999). The affidavit is not enough to allow this claim to survive summary judgment.

no claim for breach of fiduciary duty.  Plaintiff's principal,
Singh, does not remember any relevant details concerning his
conversation with Tramontana or anyone else, for that matter, at
Biondi.  Plaintiff cannot show breach without showing some sort
of act or omission made by Tramontana or Biondi.  For that
reason alone, the breach of fiduciary duty claim lodged against
Tramontana and Biondi is dismissed.[14]

### c. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

Finally, Biondi and Tramontana argue that the breach of
contract and breach of the implied covenant of good faith and
fair dealing claims must be dismissed.  Here, they argue that
New Jersey law requires, in cases of professional negligence
pleaded as breach of contract or breach of an implied covenant
of the contract, an underlying showing of professional
negligence.  Because there was no professional negligence, the
breach of contract claim cannot stand.  Alternatively, it
appears that Biondi and Tramontana argue that Plaintiff has
provided no facts to animate the breach of contract claim.

---

[14] Similarly, this claim could have been dismissed because no
facts supporting duty or proximate cause have been shown.  So,
even if this Court assumes a breach may have occurred, Plaintiff
has not pointed to facts on the record showing that Biondi and
Tramontana had a duty or that the breach proximately caused the
harm.

Plaintiff does not present any arguments in its brief in opposition to these specific arguments. Looking at Plaintiff's amended complaint, Plaintiff alleges under the breach of contract section that Tramontana is responsible for USLIC's allegedly wrongful denial of coverage. It appears that Plaintiff has merely reasserted the same UCSPA, UTPA, and/or CFA claims it made before, but packaged them as a breach of contract claim. Moreover, Plaintiff alleges: "Defendant, Steven, being an agent in addition to what has been stated herein above . . . is responsible for misrepresenting and misguiding the Plaintiffs." Plaintiff repeats some of these claims, like unreasonable denial of coverage and failure to conduct a reasonable investigation, again as the basis for its breach of the implied covenant of good faith and fair dealing claim.

As discussed in the sections, <u>supra</u>, Biondi and Tramontana were not USLIC's agents, did not write the policy, and did not investigate or deny the claim. Biondi and Tramontana cannot be held liable for actions that cannot be legally attributed to them. Because this Court has found that USLIC correctly denied Plaintiff's insurance claim and because the breach of contract and breach of implied covenant claim rests solely on this factual basis, they lack factual merit. Finally, Plaintiff has not brought forward any alleged omissions or misrepresentations made by Tramontana (or another individual at Biondi), so it

cannot claim that as a basis for either claim here. As with the claims discussed above, Plaintiff has failed to point to facts on the record that show any of its claims should survive summary judgment.

As a result, this Court need not address whether there must be a showing of professional negligence because Plaintiff has failed to provide any facts supporting its contract claims. These claims will be dismissed and the punitive damages claim that is derivative of the above claims will be dismissed as well.

### F.  Plaintiff's Motion for Summary Judgment

This motion will be denied, as all argument contained in this Motion for Summary Judgment was also contained — nearly word-for-word — in Plaintiff's opposition to USLIC's Motion for Summary Judgment.  As such, this argument has been addressed fully in the preceding parts of this opinion.  Moreover, it is fatally deficient in three respects, as it contains (1) no Statement of Undisputed Facts pursuant to Local Civil Rule 56.1, (2) no attached factual support for the factual claims made in the motion, and (3) no proposed order or substantiation of damages.  As this Court has stated before:

> Local Civil Rule 56.1 serves an important purpose both
> procedurally and substantively.  It focuses the
> parties on the facts material to the dispute.  It
> allows the court, with the help of the parties, to
> isolate those facts for the purpose of applying the

appropriate legal standard or controlling precedents.
Without compliance with the Rule, the Court is left to
sift through often voluminous submissions in search
of—sometimes in vain—the undisputed material facts.
In short, if the parties do not provide the
appropriate statements and respond forthrightly to
their opponent's submissions, the process of summary
judgment breaks down. For that reason, the Rule
provides that a motion that does not comply with the
Rule "shall" be denied.

Owens v. Am. Hardware Mut. Ins. Co., No. 11-6663, 2012 U.S.

Dist. LEXIS 182953, at *7-8 (D.N.J. Dec. 31, 2012). Plaintiff

was on notice after its first deficient filing in response to

USLIC's Motion for Summary Judgment. It's failure to follow the

instructions of Local Civil Rule 56.1 two additional times is

unexplained and unduly complicates the Court's consideration of

the pending motions.

It should go without saying that procedure is important and

Plaintiff's counsel is well-advised to remember the potential

consequences of a failure to follow the procedural rules

governing practice in this Court. Bowers v. NCAA, 9 F. Supp. 2d

460, 476 (D.N.J. 1988) (holding that a violation of Local Rule

56.1 is enough, "by itself . . . to deny [a party]'s motion for

summary judgment"). Despite this failure, as noted previously,

the Court has combed the record to insure itself the matter is

properly resolved on the merits.

## CONCLUSION

Based on foregoing, Defendants' Motions for Summary

Judgment will be granted and Plaintiff's Motion for Summary

Judgment will be denied.  All claims will be dismissed against

all Defendants.

An appropriate Order will be entered.


Date:  September 29, 2018              s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.